UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JAMES PATRICK LYONS,

Defendant.

Court File No. 26-CR-40 (SRN/ECW)

**MOTION TO DISMISS INDICTMENT AND MEMORANDUM IN SUPPORT**

## MOTION

Defendant, James Partick Lyons, under Fed.R.Crim.P.12(b) and the First Amendment to the United States Constitution, moves for an Order of the Court dismissing the Indictment. Defendant argues dismissal is required because: 1.) the Indictment fails to properly allege an offense; and 2.) the indictment violates the First Amendment.

## STANDARD OF REVIEW

Generally, in considering a motion to dismiss an indictment under Federal Rule of Criminal Procedure 12(b), the Court looks at whether the indictment itself and does not consider sufficiency of the evidence. *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001); see also *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) ("It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury."). However, prosecutions implicating fundamental First Amendment concerns are subject to dismissal of the Indictment when "factual proof is insufficient as a matter of law." *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982), cert. denied, 457 U.S. 1139 (1982). Dismissal of indictments prior to trial are warranted "only in the clearest of cases—typically, where no factfinder could conclude the statement constitutes a true

threat." *United States v. Hussaini*, 2022 WL 138474 (S.D. Fla. Jan. 14, 2022) (citing United *States v. Landham*, 251 F.3d 1072, 1082 (6th Cir. 2001).

## LAW AND ARGUMENT

Here, the Indictment is legally deficient because it fails to allege all essential elements. This defect is fatal, requiring dismissal. Additionally, because the Indictment violates the First Amendment, it should be dismissed.

### I. The Indictment's failure to allege all essential elements requires dismissal.

"The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c). "An indictment is sufficient if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution." *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir. 1988) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). An indictment must contain "all of the essential elements of the offense charged[.]" *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008); see also *United States v. Fleming,* 8 F.3d 1264, 1265 (8th Cir. 1993) ("An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." (emphasis added).

Here, the Indictment provides:

> On or about January 18, 2026, at the approximate times listed below, in the State and District of Minnesota, the defendant, JAMES PATRICK LYONS, knowingly transmitted, in interstate and foreign commerce, communications consisting of text messages, from a cellular telephone to the cellular telephones of the persons listed below, containing a threat to injure the person of another, namely, the persons listed below, to wit:

> Count 1, 8:59 a.m., Victim A:
> "Fuck you, [Victim A's first and last name] , you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker. 89B-MP-4181025."
>
> Count 2, 8:47 a.m., 8:56 a.m., Victim B:
> "Fuck you, [Victim B's first name], you traitor piece of shit ice loser."
> "Hey [Victim B's first name]! Burn in hell pussy. 8:56 a.m. We know who you are and where to find you now. Tick tock motherfucker .. "
>
> Count 3, 9:00 a.m., Victim C:
> "Fuck you, [Victim C's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker .. 282A-MP-4181782"
>
> Count 4, 8:54 a.m., Victim D:
> "Fuck you, [Victim D's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker .. "
>
> Count 5, 8:53 a.m., Victim E:
> "Fuck you, [Victim E's full first and last name] , you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker .. "

> with the purpose of issuing a threat, and with knowledge that the communication would be viewed as a threat, and consciously disregarding a substantial and unjustifiable risk that the communication would be viewed as a threat, all in violation of Title 18, United States Code, Section 875(c).

See (Doc. 9)

In *United States v. Leveke,* 38 F.4th 662, 669 (2022), the court, citing *United States v. Elonis*, 575 U.S. 723, 732, 740 (2015), noted the elements of a Section 875(c) violation "include: (1) a communication transmitted in interstate commerce, (2) that contains a threat, and (3) which is transmitted for the purpose of issuing a threat or with knowledge the communication will be viewed as a threat." (emphasis added). Here, the Indictment alleges element 1, but fails in element 2 to identify what, if any portion of the communications at issue constitute threats, and

similarly fails in element 3 to identify what purpose or knowledge Lyons supposedly had regarding any such threat.

The government's omission may be understandable insofar as the statute does not explicitly contain this mens rea element. But the Supreme Court has explicitly held the statute includes an implicit mental state requirement, satisfied when the government proves the communication is transmitted for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat. *Elonis*, 575 U.S. at 741. The Eighth Circuit has acknowledged this essential element. Compare *Leveke*, 38 F.4th at 669 with *United States v. Nicklas*, 713 F.3d 434, 440 (8th Cir. 2013) (listing the essential elements of Section 875(c) before *Elonis*). Because the Indictment fails to sufficiently address the necessary elements, dismissal is merited.

**II. The Indictment unconstitutionally attempts to criminalize protected speech.**

Prosecutions implicating fundamental First Amendment concerns are subject to dismissal of the Indictment when "factual proof is insufficient as a matter of law." *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982), cert. denied, 457 U.S. 1139 (1982). Dismissal of indictments prior to trial are warranted "only in the clearest of cases—typically, where no factfinder could conclude the statement constitutes a true threat." *United States v. Hussaini*, 2022 WL 138474 (S.D. Fla. Jan. 14, 2022) (citing *United States v. Landham*, 251 F.3d 1072, 1082 (6th Cir. 2001). Like the United States District Court in *United States v. Baker*, 890 F.Supp. 1375 (E.D. Mich. 1995), this Court should hold an evidentiary hearing and thereafter conclude, as a matter of law, that Defendant's communication is protected under the First Amendment, barring prosecution.

While "most courts agree that, 'in the usual case, whether a communication constitutes a threat is a matter to be decided by the trier of fact," *Hussaini*, 2022 WL 138474 at *5 (citations omitted), courts have recognized an obligation to dismiss indictments when proof of a true threat is insufficient as a matter of law. See *Baker*, 890 F.Supp. at 1390 (citing *Carrier*, 672 F.2d at 306). The overarching question here—whether the First Amendment protects passionate, provocative, hyperbolic commentary in response to community crisis resulting from hotly contested political issues on both the community and national scales in a public setting—should be decided the Court. The status of "speech is a question of law." *Anderson-Free v. Steptoe*, 970 F. Supp. 945, 961 (M.D. Ala. 1997) (citing *Connick v. Myers*, 461 U.S. 138, 150, n. 10 (1983). In *Connick*, the Court noted the task of balancing is a difficult endeavor which must be undertaken by the courts:

> The Constitution has imposed upon this Court final authority to determine the meaning and application of those words of that instrument which require interpretation to resolve judicial issues. With that responsibility, we are compelled to examine for ourselves the statements in issue and the circumstances under which they are made to see whether or not they . . . are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect." *Pennekamp v. Florida*, 328 U.S. 331, 335, 66 S.Ct. 1029, 1031, 90 L.Ed. 1295 (1946) (footnote omitted).
>
> Because of this obligation, we cannot "avoid making an independent constitutional judgment on the facts of the case."

*Connick*, at 150 n.10 (citations omitted). This Court, too, should make an independent judgment on the application of the First Amendment to the facts of this case, concluding Mr. Lyons' speech is constitutionally protected.

### A. Factual Background

Evidence at an evidentiary hearing will show the Indictment arises out of Mr. Lyons' political speech, directed at federal ICE agents, in response to ICE's presence, tactics, and violence against the Minneapolis community during Operation Metro Surge. The six messages at issue, sent to five federal ICE agents over the course of seven minutes, speak for themselves. They are virtual copy-pastes of each other while substituting individual names. They communicate disagreement with ICE and with the federal government that deployed them to Minnesota. They communicate exactly what democrat politicians have averred unequivocally – that the present administration's guarantees of blanket immunity for ICE agents are time limited: that criminal prosecution for ICE agents who violate the law is on its way when a new administration takes power. They do not communicate violence in any way, nor do they even reference violence. They communicate the equivalent of a message painted on a picket sign and sent to individual federal agents, who otherwise enjoyed facelessness, anonymity and unaccountability to the public. The six messages sent by Mr. Lyons in those seven minutes cannot reasonably be construed as a true threat.

While provocative, because Mr. Lyons' text messages were not true threats, the First Amendment prohibits their criminalization. Because the First Amendment provides the greatest degree of protection to political speech, and because the government attempts to abridge Mr. Lyons' right to free expression under the First Amendment, the Court should dismiss the Indictment.

**B. First Amendment Generally**

In part, the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. The function of the First Amendment, according to the United States Supreme Court, "is to invite dispute.... Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, is nevertheless protected against censorship or punishment." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) (emphasis added) (internal citation omitted). Provocative, dispute-inviting, and even dispute-creating speech is protected by the First Amendment.

**C. First Amendment Political Speech**

Speech on public issues and political matters lies at the heart of protected speech. See, e.g., *R.A.V. v. City of St. Paul*, 505 U.S. 377, 422 (1992) ("Our First Amendment decisions have created a rough hierarchy in the constitutional protection of speech. Core political speech occupies the highest, most protected position") (Stevens, concurring); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, (1964) ("debate on public issues should be uninhibited, robust, and wide-open"); *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999) ("As a general rule, speech on any matter of political, social, or other concern to the community is protected by the First Amendment") (internal quotation marks omitted). In *Connick v. Myers*, 461 U.S. 138 (1983), the Court said, "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." In the simplest of terms, the most protected speech—even if offensive, unsettling, immoral, or wrong—is speech which is political in nature. 461 U.S. at 140. As will be outlined below, perhaps no recent issue has been more politically charged in the State of Minnesota than the issues surrounding Operation Metro Surge

and the resultant public outcry – including Mr. Lyons' messages to ICE agents. It was political speech in reaction to what Lyons, and indeed much of the country as a whole, viewed to be the egregious, illegal, unconscionable, and indefensible actions by the Federal government.

## D. Political Debate Regarding ICE and Operation Metro Surge

Part of a nationwide immigration crackdown, Operation Metro Surge targeted Minnesota specifically. In December of 2025, roughly 3,000 federal agents were deployed into the state. These agents operated with anonymity, wearing masks and traveling in unmarked vehicles. They operated without any accountability to the public in the light that virtually any other law enforcement agent is subject to (i.e. names, badge numbers, faces, and marked vehicles). Over approximately three months, these agents arrested some 4,000 undocumented immigrants. They also shot three people, including killing two U.S. citizens – Alex Pretti and Renee Good. Amid the public outcry and outrage, ICE agents were promised immunity by the Trump administration. The public response in Minneapolis and Minnesota as a whole was unprecedented. Thousands took to the streets in protest, and in attempts to monitor and report on the actions of ICE agents. In a first, the people of Minneapolis were nominated for the Nobel Peace Prize for their community action in response to the injustice occurring in their community. Democrat politicians were outspoken in promising that any immunity presently offered to federal agents would be short lived – that agents who violated the law would be subject to prosecution as soon as a new administration was in power. The message was clear – the clock was ticking. This is the context that Lyons sent those six messages in just seven minutes.

**E. Application of Law to the Instant Indictment**

In *United States v. Stock*, 728 F.3d 287 (3d Cir. 2013), the court noted usually the question of whether a communication constitutes a threat or a true threat "is a matter to be decided by the trier of fact." *Id.* at 298 (citing *United States v. Kosma*, 951 F.2d 549, 555 (3d Cir. 1991); *United States v. White*, 670 F.3d 498, 512 (4th Cir. 2012); *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008); *United States v. Floyd*, 458 F.3d 844, 848–49 (8th Cir.2006); *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir.1999); *United States v. Malik*, 16 F.3d 45, 49 (2d Cir.1994). The court continued, noting, "Nonetheless, '[a] few cases at 555 (quoting *United States v. Merrill*, 746 F.2d 458, 462–63 (9th Cir.1984) and citing *Viefhaus*, 168 F.3d at 397; *Malik*, 16 F.3d at 51).

In *Stock*, the court noted "It is not unprecedented for a court to conclude that a communication does not legally qualify as a threat or a true threat." *Id*. The Court went on to cite *United States v. Watts*, noting the Supreme Court held as a matter of law that the defendant's statement was merely "political hyperbole" that did not fit within the definition of the phrase "true 'threat.'" *Id.* The *Stock* court also cited *United States v. Landham*, noting the Sixth Circuit Court of Appeals reversed the district court's denial of the defendant's motion to dismiss, concluding that "the indictment failed, as a matter of law, to allege a violation of § 875(c)" since the alleged statement was "not a 'communication containing a [true] threat.'"

In another Sixth Circuit Decision, *United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997), the court affirmed the district court's dismissal of an indictment charging the defendant with violations of § 875(c). The court held the defendant's messages "d[id] not constitute communications containing a threat under Section 875(c)." 104 F.3d at 1496. Accordingly, "a court may properly dismiss an indictment as a matter of law if it concludes that no reasonable

jury could find that the alleged communication constitutes a threat or a true threat." *Stock*, 728 F.3d at 298.

This case is most analogous to *United States v. Baker*, 890, F.Supp. 1375 (E.D. Mich, 1995), affirmed on appeal in *United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997). The background of *Baker* is similar, but also quite different. It arose in the context of electronic exchanging of messages involving a University of Michigan student, but the messages were not based on current public policy debates, but instead contained graphic descriptions of torture, rape, and murder of a woman sharing the name of a classmate at the University. 890 F.Supp. at 1379. Much media attention surrounded Baker's charges, especially the use of a real student's name. *Id*. Evaluating whether the threatening messages constituted criminal conduct, the court relied on *United States v. Kelner,* 534 F.2d 1020 (2d Cir. 1976), cert denied, 429 U.S. 1022 (1976), and its analysis of a "true threat" enunciated by the Supreme Court in *Watts*. The *Kelner* court noted analysis by the court is essential "to insure that only unequivocal, unconditional and specific expressions of intention immediately to inflict injury may be punished [as] threats." 534 F.2d at 1027. The court summarized:

> So long as the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution, the statute may properly be applied. This clarification of the scope of 18 U.S.C. s 875(c) is, we trust, consistent with a rational approach to First Amendment construction which provides for governmental authority in instances of inchoate conduct, where a communication has become "so interlocked with violent conduct as to constitute for all practical purposes part of the (proscribed) action itself.

*Id*. (citations omitted).

In *Baker*, the court was guided by the *Kelner* analysis of "unequivocal, unconditional, immediate and specific" along with specific analysis of the recipient of the communication in

question. 534 F.2d at 1384-85. The court noted, "[w]hether or not Baker actually intended to carry out the actions described in the communications is irrelevant to the constitutional inquiry." *Id*. at 1385. Evaluating each of the claimed threats in each of the five counts, the court held there is no case for a jury to decide because the factual proof was insufficient as matter of law to overcome fundamental First Amendment concerns. *Id*. at 1390.

In analyzing whether Mr. Lyons' messages were unequivocal, unconditional, immediate, and specific, the Court should consider the government's own investigation reports, which note that FBI agents interviewed Mr. Lyons who participated voluntarily, revealing and confirming the following:

> After being advised of rights under Miranda, LYONS agreed to speak to law enforcement personnel, and provided the following information: LYONS saw that someone posted a recording of some documents online. During the video, whoever posted the video was going page by page through a document that was found inside one of the Immigration and Customs Enforcement (ICE) vehicles after it had been vandalized and broken into. The documents contained phone numbers and names of what LYONS believed to be ICE agents. LYONS believed that the purpose of the video was for citizens to be able to text and call those numbers and let those ICE agents know that what they were doing was wrong. LYONS does not believe in causing damage and vandalism, but he believed that those agents in Minnesota need to be made aware that the citizens know of their atrocities. LYONS does not know who posted the video or where he found it. LYONS did not believe that what he did was wrong and he had nothing to hide.
>
> [Agent's note: At this point in the interview, LYONS offered to show agents his personal phone with text messages. LYONS provided a pin of 271727 for his cellphone.]
>
> LYONS admits that he used strong language when he messaged the unknown numbers, and language that he never usually uses. LYONS believed he messaged about half a dozen different numbers. LYONS said that the "Tick Tock motherfucker" meant that the ICE agents will get what's coming to them once the laws change and once this current administration is no longer in power. LYONS likened the current situation to Nazi Germany, where Nazis were not prosecuted during the time that Hitler was alive, but once Hitler died, they had to face the Nuremburg trials and had to be held to their crimes.
>
> LYONS believed that once the midterm elections take place, ICE agents will have to face justice for their crimes. LYONS' hope with sending these text messages, along with hundreds of thousands of other people's messages, was for ICE agents to realize that

> people knew of their crimes, and that everyone was watching. LYONS was hoping that the agents would realize the mistake of being an ICE agent and quit.
>
> LYONS described himself as a pacifist and said that he would never hurt anyone. LYONS was not aware of any groups trying to organize to hurt federal agents.

The type of unspecific provocative language as used by Lyons is commonplace is a world which embraces free expression. Astronomer Sir Patrick Moore, whose great grandfather died in a Nazi concentration camp, is widely quoted as saying "The only good Kraut is a dead Kraut." https://www.telegraph.co.uk/news/uknews/9238579/The-only-good-Kraut-is-a-dead-Kraut Sir-Patrick-Moore-says.html. "The only good Indian is a dead Indian" is an offensive historical saying of disputed origin. Most credit General Philip Sheridan from 1869. https://www.trivia-library.com/b/origins-of-sayings-the-only-good-indian-is-a-dead indian.htm. In May of 2020, while still in office, former President Donald Trump "retweeted" a video of a supporter proclaiming, "The only good Democrat is a dead Democrat." https://www.washingtonpost.com/politics/2020/05/28/trump-retweets-video-saying-onlygood-democrat-is-dead-democrat/. Trump also ubiquitously urged the use of deadly force against petty looters, the killing of journalists, shooting immigrants who illegally crossed the border, and other offensive calls for violence. *Id.* But offensive misguided musings of a politician seeking the attention of the voting public are no more criminal than political rhetoric related to current events submitted by a concerned U.S. citizen in response to grave injustice and unaccountability.

Mr. Lyons' texts are virtual copy-pastes of each other. The six messages sent by Lyons to five ICE agents over the course of seven minutes amount to: 'What you are doing is wrong [name of victim]. You are on the wrong side of both history and human decency. You are not as anonymous as you might believe. The time for you to be held accountable is coming.' These

messages are not unequivocal, nor unconditional, nor immediate, nor specific. Evaluating the provocative but hyperbolic commentary submitted by Mr. Lyons, no factfinder could conclude the statements constitute a true threat.

Mr. Lyons was not involved in the ransacking of the federal government vehicles. He was not involved in the looting of their contents. He was not involved in obtaining the personal information or phone numbers of the federal agents. He did not post that information to the internet. Rather, Mr. Lyon's read publicly available information posted to social media – presumably to a political action social media page. He then sent text messages to numbers that he had no way of knowing who they actually belonged to. He had no prior knowledge or interaction with these individuals. He sent political messages to individuals who were, up to the point of their personal information being leaked onto the internet, entirely faceless, anonymous, unreachable, and unaccountable.

Section 875(c) is a specific intent crime that requires proof that the defendant transmitted "a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *United States v. Dierks*, 978 F.3d 585, 591 (8th Cir. 2020) (citing *Elonis v. United States*, 575 U.S. 723, 740 (2015)). Additionally, a "true threat" requires an objective "finding that a reasonable person would have been threatened by the charged communication." *Id*. at 592. In making this determination, "the communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made." *United States v. Mabie*, 663 F.3d 322, 331 (8th Cir. 2011). Courts dismiss indictments under the First Amendment before trial "only in the clearest of cases—typically, where no factfinder could conclude that the statement constitutes a true threat of future harm" *United States v. Sayward*, 2022 WL 17849053. If there is no question that a defendant's

speech is protected by the First Amendment, the court may dismiss the charge as a matter of law *United States v. Bippert*, , 2022 WL 625083. Such dismissal is appropriate here.

## CONCLUSION

Defendant Lyons respectfully requests the Court schedule an evidentiary hearing for the presentation of evidence, testimony, and argument. Despite our Nation's commitment to unfettered free speech on political issues, the government here casts a pall of orthodoxy over the political debate to which Mr. Lyons had the right to participate. The vigilant protection of constitutional freedom is nowhere more vital than in a federal courtroom in Minneapolis, Minnesota, where those vested with the awesome power of pursuing criminal prosecution are intolerant to provocative but constitutionally protected speech. As a matter of law, the Court should dismiss the Indictment.

Respectfully submitted,

**WOLD LAW**

Dated: March 27, 2026

/s/ Peter B. Wold

Peter B. Wold, No. 118382
331 Second Ave. S., Ste. 705
Minneapolis, MN 55401
pwold@wold-law.com
612-341-2525