UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-40 (SRN/ECW)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES PATRICK LYONS,<br><br>Defendant. | ) | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its opposition to the defendant's motion to dismiss the Indictment. (ECF 30) The defendant moves to dismiss the Indictment on two grounds. First, the defendant claims that the Indictment fails to allege all the "essential elements" of the crime charged, i.e., 18 U.S.C. § 875(c) (Interstate Transmission of a Threat to Injure the Person of Another). (Id. at 2-4) And second, the defendant asserts that the Indictment unconstitutionally attempts to criminalize protected speech. (Id. at 4-5, 9-14) Because the charge in the Indictment tracks the statutory language of the offense charged and reasonably provides the defendant sufficient information to allow him to plead and bar a subsequent prosecution, the Indictment is facially sufficient, and the defendant's pretrial motion should be denied. Additionally, because whether the defendant's alleged speech constitutes a "true threat" is decisively a question reserved for the jury at trial as the fact-finder, the defendant's pretrial motion to dismiss should be denied.

Relevant Procedural History and General Factual Background

On January 25, 2026, the Court issued a criminal complaint charging the defendant with one count of knowingly transmitting, in interstate and foreign commerce, threats to injure the person of another, (namely, Victims A through E), on or about January 18, 2026, in violation of 18 U.S.C. § 875(c). (ECF 1) The factual background from the accompanying complaint affidavit, (ECF 1-1), is incorporated herein by reference. In summary, following an immigration-enforcement-involved shooting in Minneapolis on the evening of January 14, 2026, FBI agents responded to the scene to investigate the shooting, but were not involved in any immigration enforcement. As a result of the shooting, a large group of protestors gathered and became violent, forcing the FBI agents and personnel to leave behind two government-owned vehicles parked near the scene and evacuate the area on foot for their personal safety.

Several protestors broke into and significantly vandalized the two government-owned vehicles left at the scene, causing a total loss of each vehicle. FBI-issued equipment and materials, including a rifle, rifle suppressor, a handgun, tactical vests, FBI IDs and building access badges, and various personal and FBI documents were stolen from the ransacked vehicles. Some stolen documents were driver's licenses and rosters with employees' phone numbers, email addresses, and other personal information, including that of the five alleged victims in this matter (Victim A, Victim B, Victim C, Victim D, and Victim E). Much of the compromised information was publicly posted online via social media. Soon thereafter, several FBI Agents and

employees, including the five victims, began receiving multiple harassing and threatening phone calls, texts, and emails from unknown persons across the country.

Four of the alleged victims are FBI Special Agents with the Minneapolis Field Office, and one is a Federal Task Force Officer assigned to the Minneapolis FBI office. Over the course of several days, each victim received multiple threatening and harassing texts and/or voicemails on their work phones from unknown persons, causing the victims concern for their and their families' safety. For example, Victim A had their apartment key and driver's license stolen from the ransacked vehicles and could not return to their apartment after receiving the threatening texts and calls. Victim B had an unknown person show up to their personal residence while their family was home. Victim C had strangers call their work cell phone and yell and curse at them, and threaten their family members, and could not use their work cell phone any longer because of the volume of threatening and harassing calls and texts being received on a daily basis.

As it pertains to the charges at hand, on the morning of January 18, 2026, each of the five alleged victims received similar text messages from the same cellular telephone number ending in 9435, which investigators determined belonged to the defendant. The text messages, with only slight variations, stated the following:

| Time | Person | Communication |
|---|---|---|
| 8:59 a.m. | Victim A | "Fuck you, [Victim A's first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker. 89B-MP-4181025." |

| Time | Person | Communication |
|---|---|---|
| 8:47 a.m.<br><br>8:56 a.m. | Victim B | "Fuck you, [Victim B's first name], you traitor piece of shit ice loser."<br><br>"Hey [Victim B's first name]! Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.." |
| 9:00 a.m. | Victim C | "Fuck you, [Victim C's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.. 282A-MP-4181782" |
| 8:54 a.m. | Victim D | "Fuck you, [Victim D's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.." |
| 8:53 a.m. | Victim E | "Fuck you, [Victim E's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.." |

The defendant's text messages correctly identified each victim by their first and/or last name, and the numbers included in two of the text messages were active actual FBI case numbers. Investigators learned the defendant resided in Murrieta, California, and emergency disclosure requests to the defendant's cell phone service provider confirmed the defendant as the subscriber to the 9435 number and that the phone was located in Murietta, California.

The FBI arrested the defendant on the Complaint-Warrant in California on January 26, 2026, and he agreed to speak with investigators after receiving a Miranda advisory. The defendant had his 9435 cell phone on his person and it was seized as evidence. The defendant voluntarily provided the access code for the 9435 cell phone. He admitted that he sent the text messages to the numbers and names

of who he believed to be ICE agents after locating the information on the internet. He admitted that he used "strong language" in the text messages "that he never usually uses." He claimed that the language purportedly warned the ICE agents that they would be held legally accountable, and he hoped that by sending the text messages, along with thousands of other messages from other people, it would force the ICE agents to quit.

The defendant made his initial appearance in the Central District of California on January 27, 2026, and the court ordered his release on a $25,000 appearance bond with conditions. (See ECF 5)

On February 12, 2026, a grand jury returned a five-count Indictment charging the defendant with five counts of Interstate Transmission of a Threat to Injure, in violation of 18 U.S.C. § 875(c), each of which carries a statutory maximum of five-years' imprisonment, for the alleged threatening texts sent to each of the five victims, as described above and in the Complaint affidavit. (ECF 9)

On February 18, 2026, the defendant made his initial appearance in this District, and was ordered released on personal recognizance with conditions. (ECF 15, 18, 19)

On March 27, 2026, the defendant filed the present motion to dismiss the indictment. (ECF 30)

## ARGUMENT

1. Because the Indictment is legally sufficient on its face, the defendant's motion to dismiss should be denied.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It is well settled that as long as "the indictment contains a facially sufficient allegation," it "survives a motion to dismiss for failure to state an offense." *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (citing *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution." *United States v. Flute*, 929 F.3d 584, 587 (8th Cir. 2019) (quoting *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993), & reversing dismissal of indictment). Indeed, an indictment is usually sufficient unless it is "so defective that it cannot be said, by any reasonable construction, to charge the offense." *United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019) (quoting *United States v. Mann*, 701 F.3d 274, 288 (8th Cir. 2012)); *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

The Indictment filed against the defendant (ECF 9) readily satisfies these legal standards and meets the Rule 7(c) requirements. 18 U.S.C. § 875(c), as charged in Counts 1 through 5, provides that "[w]hoever transmits in interstate or foreign

commerce any communication containing . . . any threat to injure the person of another, shall be . . . imprisoned . . . ." 18 U.S.C. § 875(c).

Counts 1 through 5 essentially track the exact statutory language by alleging that, on or about the specific date and approximate times, the defendant "knowingly transmitted, in interstate and foreign commerce, communications consisting of text messages, from a cellular telephone to the cellular telephone of [each victim], containing a threat to injure the person of another, namely [the victims] . . . all in violation of Title 18, United States Code, Section 875(c)." (ECF 9) "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Jawher*, 950 F.3d 576, 579 n.2 (8th Cir. 2020) (quoting *Sewell*, 513 F.3d at 821). Because the Indictment's language is essentially verbatim of the statutory language charged, the Indictment is facially sufficient to state an offense, and the defendant's motion to dismiss should be denied.

The defendant, however, without citation to any supporting authority, claims that while the Indictment alleges "a communication transmitted in interstate commerce," the Indictment "fails . . . to identify what, if any portion of the communication at issue constitutes threats." (ECF 30 at 3) But this claim fails because the government is not required "to quote the alleged threats in the indictment." *United States v. Abdulkadir*, 2016 WL 659711, at *3 (D. Minn. Feb. 18, 2016) (denying defendant's motion to dismiss indictment charging § 115(a) threats to murder United States judge and federal officers and § 875(c) threats to injure). *See also United States v. Saul*, 2020 WL 2124853, at *4 (D. Neb. May 20, 2020) ("It is

neither feasible nor required for an indictment to recount all surrounding factual circumstances.") (construing threats indictment).

In any event, contrary to the defendant's claim, the Indictment nevertheless specifies the alleged threatening texts the defendant sent to each victim. But the government need not parse the alleged threating language, looking at each statement in isolation, because "context matters," *Elonis v. United States*, 575 U.S. 723, 747 (2015) (Alito, J., concurring in part). Indeed, whether a statement amounts to a true threat is a fact-intensive inquiry "for the fact-finder to determine in the context of the totality of the circumstances in which the communication was made." *United States v. Ivers*, 967 F.3d 709, 718 (8th Cir. 2020). "[T]he communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made." *United States v. Dierks*, 978 F.3d 585, 589 (8th Cir. 2020). *See United States v. Hart*, 212 F.3d 1067, 1071 (8th Cir. 2000) (noting that "to determine whether a true threat exists," the alleged threat must be viewed "in light of its entire factual context").

Taking the defendant's texts as a contextual whole, a reasonable jury could find that the defendant's texts constituted a true threat. *See United States v. Bellrichard*, 994 F.2d 1318, 1321 (8th Cir. 1993) (recognizing that correspondence directed to one's home or work more likely to be perceived as threat than general statement delivered at public gathering). *See also United States v. Miah*, 120 F.4th 99, 108 (3d Cir. 2024) (finding that "contextualized tweets" expressed serious intent

to harm agents and holding that "threats targeting FBI agents generally are sufficiently particularized to qualify as true threats").

Moreover, "[i]n determining whether a statement amounts to an unprotected threat, there is no requirement that the speaker intended to carry out the threat, nor is there any requirement that the speaker was capable of carrying out the purported threat of violence." *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002). *Accord United States v. Leveke*, 38 F.4th 662, 668 (8th Cir. 2022); *United States v. Howard*, 947 F.3d 936, 949 (6th Cir. 2020). *See Dierks*, 978 F.3d at 590 ("The 'true threat' doctrine only requires that a jury find that a defendant's statement was serious, not literal or even intelligible. Even if 'a person expresses himself in an outlandish, illogical manner,' his statements can be seriously threatening.") (citation omitted).

Additionally, "[u]sage of a particular word or phrase in the indictment is not required" if a Court can recognize a "valid offense and the form of the allegation 'substantially states the element[s].'" *United States v. White*, 241 F.3d 1015, 1021 (8th Cir. 2001); *Leveke*, 38 F.4th at 669 (rejecting argument that indictment failed to state an essential element regarding what constitutes a "true threat" because "[t]he indictment pleaded the essential elements for § 875(c)" on its face). *See also United States v. White*, 610 F.3d 956, 958-59 (7th Cir. 2010) (per curiam) (noting that an indictment that "tracks the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any

particular fact is not dispositive.”). Because the Indictment provides enough factual context of the alleged threat, the element is sufficiently pled, and the defendant’s motion to dismiss should be denied.

The defendant also asserts, again without any supporting citation, that the Indictment “similarly fails . . . to identify what purpose or knowledge Lyons supposedly had regarding any such threat.” (ECF 30 at 4) This assertion also misses the mark. With respect to the defendant’s subjective intent, the Indictment alleges the requisite intent dictated by the Supreme Court in both *Elonis* and *Counterman*, namely that the defendant knowingly transmitted the text messages containing a threat with the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat, *Elonis*, 575 U.S. at 740, or consciously disregarded a substantial risk that his communications would be viewed as a threat, *Counterman v. Colorado*, 600 U.S. 66, 69 (2023).

Nothing more is required. “The plain language of § 875(c) thus criminalizes a broad spectrum of threats to injure the person of another, ranging from threats that are a means to achieving some tangible end, to *threats that serve no discernible purpose other than intimidation for its own sake*.” *United States v. Jongewaard*, 567 F.3d 336, 340 (8th Cir. 2009) (“reject[ing] the premise that a communication qualifies as a threat under § 875(c) only if it is a means to an end other than intimidation for its own sake”) (emphasis added). *See White*, 241 F.3d at 1021 (noting that Court “will find an indictment insufficient only if an ‘essential element ‘of substance’ is omitted’”).

Contrary to the defendant's generic assertion that "the Indictment fails to sufficiently address the necessary elements," (ECF 30 at 4), the Indictment, in fact, goes beyond simply stating all the essential elements of § 875(c). The Indictment alleges the instrument used to transmit the threat (i.e., the defendant's cellular phone), the means by which the alleged victims received the threats (i.e., their cellular phones), the kind of communication (i.e., the text messages), *and* the specific words of the alleged threat in context. Not only, therefore, does the Indictment track the words of the statute to state all its elements, but it also provides the defendant enough factual particulars for him to be aware of the specific conduct at issue. *White*, 610 F.3d at 958-59. The Indictment, therefore, is wholly sufficient to allow the defendant to respond to the charges and to plead double jeopardy after conviction or acquittal should the charges be brought again. *Flute*, 929 F.3d at 587; *United States v. Mallen,* 843 F.2d 1096, 1102 (8th Cir. 1988) (noting that indictment considered sufficient "if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution"). On this record, the Indictment cannot be deemed to be "so defective that it cannot be said, by any reasonable construction, to charge the offense." *Palmer*, 917 F.3d at 1039. Because the Indictment more than facially suffices to state the offense, it readily meets the Rule 7(c) requirements, and the defendant's motion to dismiss should be denied.

2. Whether the defendant's statements constitute a "true threat" within the Supreme Court's jurisprudence should be left for the jury to decide at trial and not by a court on a motion to dismiss the Indictment.

The defendant next claims that the Indictment unconstitutionally criminalizes protected speech and, relying on cases outside the Eighth Circuit, asserts that the Court should "hold an evidentiary hearing" to determine as a matter of law whether his statements fall within the First Amendment's protection to bar prosecution. (ECF 30 at 4) The defendant asks the Court to "make an independent judgment" about the alleged threats and determine they are constitutionally protected. (Id. at 5) The defendant's claims, however, amount to asking the Court to assess the pretrial sufficiency of the government's evidence and should be rejected because they are contrary to Eighth Circuit jurisprudence. Accordingly, the defendant's motion to dismiss should be denied.

It is well-established that "[t]here is no procedure in federal criminal cases equivalent to the motion for summary judgment in civil cases, and the government has no duty to reveal all of its proof before trial." *United States v. Grubb*, 135 F.4th 604 607 (8th Cir. 2025), (citing *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995)). "[W]hen courts go beyond the face of the indictment, they are testing the sufficiency of the evidence, not whether the indictment stated an offense. However, challenges to the evidence's sufficiency are tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29, not by a dismissal of an indictment on the basis of predictions as to what the trial evidence will be." *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (cleaned up) (quoting *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (noting that federal criminal procedure does

not "provide for a pre-trial determination of sufficiency of the evidence"). *See also United States v. Funk*, 412 F.2d 452, 455 (8th Cir. 1969) (noting that indictments are not subject to challenge on "inadequate or incompetent evidence" because "[t]he result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence") (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)).

Yet a "preliminary trial" to test the sufficiency of the government's evidence is precisely what the defendant seeks by asking the Court to make a pretrial ruling on whether the threats alleged on the face of a valid, sufficient indictment fall within the ambit of the First Amendment. But "[t]his is not required by the Fifth Amendment." *Funk*, 412 F.2d at 455. "Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. In considering a motion to dismiss, a district court may not make factual findings when an issue is inevitably bound up with evidence about the alleged offense itself." *Grubb*, 135 F.4th at 607 (quoting *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016)). Resolving the defendant's challenge at the pretrial stage, however, would require the Court to make such factual findings. But as *Grubb* admonishes, "the government is not required to present its case in response to a motion to dismiss, and dismissal is not justified based on the government's refusal to come forward with evidence to support its case in the face of a defendant who has presented his own proof." *Id.* And "[u]nless the prosecution voluntarily presents

the entirety of its evidence in response to a pretrial motion, the court cannot know the universe of additional facts that will be presented at trial," and therefore cannot make factual findings on an issue that is "inevitably bound up with evidence about the alleged offense itself." *Id.* Instead, as the *Grubb* court concluded, "a 'trial on the merits,' [is] needed to decide [the defendant's] pretrial motion to dismiss the indictment." *Id.* *See United States v. Petersen*, No. 25-cr-379 (PJS/DLM), Report & Recommendation, filed at ECF 53 (D. Minn. April 13, 2026) (rejecting motion to dismiss threats indictment that "essentially asks this Court to leapfrog the jury and conduct its own pretrial evidentiary inquiry to determine whether his statements are political hyperbole, as he suggests, or true threats, as the government alleges. . . . but that is an exercise he must save for trial."). Accordingly, the defendant's motion to dismiss should be denied.

Here, the defendant's motion to dismiss is premature, and its resolution would require the Court to make factual findings about an issue that is "inevitably bound up with evidence about the alleged offense itself," namely whether the defendant's texts constitute "true threats" under 18 U.S.C. § 875(c), as alleged in the Indictment. Such required findings, however, would be in direct contradiction to the Eighth Circuit's holding in *Grubb*. *See also Turner*, 842 F.3d at 605 (holding that "[g]ood cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that fall within the province of the ultimate finder of fact.").

Moreover, "Congress meant to proscribe a broad class of threats in Section 875(c)." *Elonis*, 575 U.S. at 734. And "[i]n the absence of unusual facts though, the question whether a statement amounts to a true threat is a question generally left to a jury." *Brandy v. City of St. Louis, Missouri*, 75 F.4th 908, 915 (8th Cir. 2023). Other Circuits are in accord. *E.g., United States v. Clemens*, 738 F.3d 1, 13 (1st Cir. 2013) (finding that First Amendment is "not a basis on which to take away from a jury the factual question of whether or not defendant's emails conveyed true threats") (collecting cases from various Circuits); *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982) ("whether words used are a true threat is generally left to the triers of fact"); *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) ("In the usual case, whether a communication constitutes a threat or a true threat 'is a matter to be decided by the trier of fact.'"); *White*, 610 F.3d at 959 (rejecting argument to dismiss indictment on First Amendment grounds, because "potential First Amendment concern[s] [are] addressed by the requirement of proof beyond a reasonable doubt at trial, not by a dismissal at the indictment stage"); *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008) (whether statements were true threats is a question for the jury).

The defendant's reliance on *United States v. Baker*, 890 F. Supp. 1375 (E.D. Mich. 1995) (ECF 30 at 4-5, 9-11), is misplaced because many courts have recognized that *Baker* is an outlier, and the Sixth Circuit's decision affirming *Baker*, also cited by the defendant (ECF 30 at 9-10), has itself been abrogated by *Elonis*. *E.g., United States v. Dennison*, 2022 WL 834437, at *2 (D. Me. Mar. 21, 2022) ("*Baker* is an

outlier, . . . [and] thus offers little guidance as to the level of specificity required for a true threat."); *United States v. Sayward*, 2022 WL 17849053, at *3 (D.N.D. Dec. 22, 2022) ("Critically though, *Baker* is a well-recognized outlier in federal case law."); *United States v. Hussaini*, 2022 WL 138474, at *5 (S.D. Fla. Jan. 14, 2022) (recognizing that "only one federal judge has *ever* dismissed an indictment before trial on the argument Hussaini advances here—that, while the charged statements are disturbing and plainly threatening, they do not constitute 'true threats' because their target audience was too inchoate and undefined.").

Moreover, the Sixth Circuit's decision in *United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997), which affirmed *Baker* and erroneously added an element to § 875(c)'s quantum of proof, has been abrogated by the Supreme Court's decision in *Elonis*, 575 U.S. 723 (2015). *See United States v. Doggart*, 906 F.3d 506, 512 (6th Cir. 2018) (recognizing abrogation of *Alkhabaz* by *Elonis*).

Lastly, the defendant's reliance on *United States v. Kelner*, 534 F.2d 1020 (2d Cir. 1976), which he notes guided *Baker*'s analysis, and which he cites for the proposition that "true threats" must be "unequivocal, unconditional, immediate and specific," (ECF 30 at 10-11) also falls wide of the mark. The Second Circuit itself has noted that the quoted language is no more than dicta in *Kelner* and is *not* the standard for determining whether statements amount to true threats. *See United States v. Turner*, 720 F.3d 411, 424 (2d Cir. 2013) (rejecting argument that "*Kelner* requires that *all* threats, whatever the statute prohibiting them, must satisfy these conditions before they may be punished consistent with the First Amendment" because Second

Circuit has "affirmed convictions for threats that were both conditional and inexplicit") (emphasis in original). Indeed, the *Turner* court noted that the concurring opinion in *Kelner* itself noted that the conditions that the defendant cites as required for finding true threats was labeled as obiter dicta. *Id.* at 424 (citing *Kelner*, 534 F.2d at 1029 (Mulligan, J., concurring) ("I cannot accept Judge Oakes's obiter dicta . . . . [T]he proposed requirement that the threat be of immediate, imminent and unconditional injury seems to me to be required neither by the statute nor the First Amendment.")).

*Kelner* also appears to be an outlier. The only Eighth Circuit decision to have cited and relied on *Kelner*'s dicta was itself vacated by the Eighth Circuit en banc. *See Doe ex rel. Doe v. Pulaski Cnty. Special Sch. Dist.*, 263 F.3d 833, 837 (8th Cir. 2001) (citing *Kelner,* 534 F.2d at 1027), *reh'g en banc granted, judgment vacated* (Nov. 2, 2001), *on reh'g en banc sub nom. Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616 (8th Cir. 2002). Other courts have also declined to follow the quoted dicta in *Kelner*. *E.g., United States v. Landham*, 251 F.3d 1072, 1080 n.3 (6th Cir. 2001) (noting that *Kelner* differs from the rule in the Sixth Circuit, and declining to apply it); *United States v. Toltzis*, 2016 WL 3479084, at *4 (N.D. Cal. June 27, 2016) (noting "court has yet to find a Ninth Circuit case that follows this [*Kelner*] rule, and there even appears to be disagreement within the Second Circuit as to its applicability," and "[t]he court thus declines to follow the standard set forth in *Kelner*.").

At bottom, the overwhelming weight of case law holds that whether the defendant's statements do or do not amount to "true threats" is a factual

determination for a jury to decide and is not a basis for dismissing the Indictment. Indeed, even when deciding a motion for judgment of acquittal, the "district court does not decide that a particular communication *is* a threat as a matter of law, but whether there is sufficient evidence *for a jury to decide* that a reasonable recipient would interpret it as a threat. If, at that point, the evidence is sufficient, *it is up to the jury to decide* whether the language in the communication at issue was a threat." *United States v. Floyd*, 458 F.3d 844, 849 (8th Cir. 2006) (citation omitted; first emphasis in original). Because a determination of whether the defendant's statements are true threats or within the ambit of First Amendment protection is best left to a fact-finding jury at trial, the defendant's motion to dismiss the Indictment should be denied, and the matter should be referred for jury trial.

**CONCLUSION**

For all the foregoing reasons, the Court should deny the defendant's motion to dismiss the Indictment, and the matter should proceed to trial.

Dated: April 17, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

/s/ *Benjamin Bejar*
BY: BENJAMIN BEJAR
Assistant United States Attorney
District of Minnesota