**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United States of America,

Plaintiff,

v.

James Patrick Lyons,

Defendant.

Case No. 26-cr-00040 (SRN/ECW)

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant James Patrick Lyons' March 27, 2026 Motion to Dismiss Indictment (Dkt. 30) ("Motion to Dismiss"). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

On April 17, 2026, the Government filed its opposition to the Motion to Dismiss. (Dkt. 31.) Based on the request of the parties, the Court cancelled the April 27, 2026 hearing and gave Defendant the opportunity to file a reply on or before April 27, 2026. (Dkt. 32.) No reply was filed, and the Court took the Motion to Dismiss under advisement as of April 27, 2026. (*Id.*)

For the reasons stated below, the Court recommends denial of the Motion to Dismiss.

## I.    BACKGROUND

On February 12, 2026, Lyons was charged by Indictment with five separate counts of Interstate Transmission of a Threat to Injure the Person of Another in violation of 18

U.S.C. § 875(c) in connection with text messages he allegedly sent five different persons on or about January 18, 2026.  (Dkt. 9.)

## II.    ANALYSIS

Lyons makes two arguments in support of his Motion to Dismiss, which seeks dismissal under Rule 12 of the Federal Rules of Criminal Procedure.  (Dkt. 30.)  First, Lyons argues that the Indictment is legally deficient because it fails to allege all essential elements of the offense.  (*Id.* at 2.)  Second, Lyons argues that the Indictment unconstitutionally attempts to criminalize speech protected by the First Amendment.  (*Id.* at 4-5.)  The Court will address these arguments in turn.

### A.    Sufficiency of the Indictment

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019) ("An indictment is adequate 'if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution.'") (quoting *United States v. Mann*, 701 F.3d 274, 288 (8th Cir. 2012)); *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009) ("An indictment adequately states an offense if: it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information

2

to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." (quoting *United States v. Sewell,* 513 F.3d 820, 821 (8th Cir. 2008)).

When considering a motion to dismiss the indictment on the basis of insufficiency, "[o]rdinarily, the Court's assessment is limited to the 'four corners' of the Indictment, and the Court should studiously avoid the consideration of evidence from sources beyond the Indictment." *United States v. Hughson*, 488 F. Supp. 2d 835, 841 (8th Cir. 2007) (citing *United States v. Hall*, 20 F.3d 184, 1087 (8th Cir. 1994)). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *Hayes*, 574 F.3d at 472 (quoting *Sewell,* 513 F.3d at 821). "Usage of a particular word or phrase in the indictment is not required as long as we can recognize a valid offense and the form of the allegation substantially states the elements. In fact, we will find an indictment insufficient only if an essential element of substance is omitted." *United States v. White*, 241 F.3d 1015, 1021 (8th Cir. 2001) (citation modified). "An indictment is normally sufficient if its language tracks the statutory language." *Sewell*, 513 F.3d at 821 (citing *Hamling*, 418 U.S. at 117); *see also United States v. Whitlow*, 815 F.3d 430, 433 (8th Cir. 2016).[1]

---

[1]    The Eighth Circuit in *Whitlow* found as follows:

> An indictment is sufficient if it contains the elements of the offense charged, lets the defendant know what he needs to do to defend himself, and would allow him to plead a former acquittal or conviction if he were charged with a similar offense. Usually an indictment that tracks the statutory language is sufficient. Whitlow does not specifically identify how the indictment is deficient. Instead he generally challenges it as "bare bones" and "without

The Government charged Lyons with violating 18 U.S.C. § 875(c), which states:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 875(c). This crime, therefore, is comprised of the following elements:

(1) a communication transmitted in interstate commerce,

(2) that contains a threat [to injure], and

(3) which is transmitted for the purpose of issuing a threat or with knowledge the communication will be viewed as a threat.

*United States v. Leveke*, 38 F.4th 662, 669 (8th Cir. 2022) (citing *Elonis v. United States*, 575 U.S. 723, 739 (2015)); *see also United States v. Dierks*, 978 F.3d 585, 590-91 (8th Cir. 2020). Subsumed within these elements is the requirement that a defendant "intended for the communication to be threatening or at least knew that the communication would be viewed as threatening." *United States v. LaFontaine*, 847 F.3d 974, 979 (8th Cir. 2017) (citing *Elonis*, 135 S. Ct. at 2012 ("[T]he mental state requirement in [§] 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat.")).

---

any factual statement of his involvement," such that none of the "elements of conspiracy can be proven." To the extent Whitlow's argument relies on a lack of proof, we agree with the district court that such a challenge to an indictment is not allowed.

*Whitlow*, 815 F.3d at 433 (citation omitted).

4

In this case, the Indictment alleges in relevant part that on January 18, 2026,

Lyons:

knowingly transmitted, in interstate and foreign commerce, communications consisting of text messages, from a cellular telephone to the cellular telephones of the persons listed below, containing a threat to injure the person of another, namely, the persons listed below, to wit:

| Count | Time | Person | Communication |
|---|---|---|---|
| 1 | 8:59 a.m. | Victim A | "Fuck you, [Victim A's first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker. 89B-MP-4181025." |
| 2 | 8:47 a.m.<br><br>8:56 a.m. | Victim B | "Fuck you, [Victim B's first name], you traitor piece of shit ice loser."<br><br>"Hey [Victim B's first name]! Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker .." |
| 3 | 9:00 a.m. | Victim C | "Fuck you, [Victim C's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.. 282A-MP-4181782" |
| 4 | 8:54 a.m. | Victim D | "Fuck you, [Victim D's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.." |
| 5 | 8:53 a.m. | Victim E | "Fuck you, [Victim E's full first and last name], you motherfucking traitorous piece of shit ice agent. Burn in hell pussy. We know who you are and where to find you now. Tick tock motherfucker.." |

(Dkt. 9 at 1-2.)

The Indictment further states that Lyons made these threats "with the purpose of issuing a threat, and with knowledge that the communication would be viewed as a threat, and consciously disregarding a substantial and unjustifiable risk that the communication would be viewed as a threat . . . ." (*Id*. at 2.)

Lyons argues that the Indictment is insufficient because it fails to identify what, if any portion of the communications at issue constitute threats, and fails to identify what purpose or knowledge Lyons supposedly had regarding any such threat. (Dkt. 30 at 3-4.) Lyons contends that there is an implicit mental state requirement, which is satisfied when the Government proves the communication is transmitted for the purpose of issuing a threat, or with knowledge that communication will be viewed as a threat. (*Id.* at 4.)

The Government counters that because the Indictment's language is essentially verbatim of the statutory language charged, the Indictment is facially sufficient to state an offense, and the Motion to Dismiss should be denied. (Dkt. 31 at 7.) The Government also takes the position that it need not even quote the alleged threats in an indictment and that in any event, the Indictment specifies the alleged threatening texts Lyons sent to each alleged victim. (*Id.* at 7-8.) The Government goes on to argue it need not parse the alleged threating language, looking at each statement in isolation, because the context of the statement matters. (*Id.* at 8.)

The Court agrees with the Government that the Indictment pleads the essential elements for a § 875(c) offense. The Indictment charges that Lyons transmitted text messages from a cellular phone to another cellular phone "containing a threat to injure"; states with specificity the threatening communication sent to each victim; and asserts that

6

Lyons sent these communications with the purpose of issuing a threat, and with knowledge that the communication would be viewed as a threat, or consciously disregarding a substantial and unjustifiable risk that the communication would be viewed as a threat. (Dkt. 9.) In other words, the Indictment tracks the essential elements for a § 875(c) violation, including the *mens rea* of Lyons. That is all that is required. *See Leveke*, 38 F.4th at 669; *see also United States v. Abdulkadir*, No. 16-CR-00002 (KES/VLD), 2016 WL 659711, at *4 (D. Minn. Feb. 18, 2016) ("The court finds that counts 1 and 2 allege sufficient mens rea. Counts 1 and 2 of the indictment both state that Abdulkadir allegedly 'did threaten, by posting tweets to his Twitter account intending to impede, intimidate, and interfere and to retaliate.' The court finds that both counts allege that Abdulkadir issued a threat and intended that the recipient view the statements as threats. Thus, counts 1 and 2 allege mens rea sufficient to satisfy the *Elonis* standard." (citation modified)).

In addition, as set forth above, Lyons has been informed of the communications that the Government asserts are threatening by virtue of the Indictment, and no further explanation is required in this regard, as "the government need not allege its theory of the case or supporting evidence." *United States v. Finch*, No. 21-CR-00157 (PAM/ECW), 2022 WL 1110994, at *16 (D. Minn. Feb. 9, 2022) (citation modified), *R. & R. adopted*, 2022 WL 843937 (D. Minn. Mar. 22, 2022). Further, any assertion by Lyons that the Indictment does not fairly inform him of the charges against which he must defend is contradicted by his arguments in the Motion to Dismiss that the alleged threatening

communications made by him listed in the Indictment are in fact protectable political speech.  (*See* Dkt. 30 at 8-13.)

**B.      First Amendment Considerations**

The First Amendment provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I.  However, "[t]rue threats" are "outside the bounds of the First Amendment's protection."  *Counterman v. Colorado*, 600 U.S. 66, 72 (2023).  "What is a [true] threat must be distinguished from what is constitutionally protected speech."  *Watts v. United States*, 394 U.S. 705, 707 (1969) (per curiam).  "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')."  *Counterman*, 600 U.S. at 74.  True threats, in other words, are "serious expressions conveying that a speaker means to commit an act of unlawful violence."  *Id.* (citation modified).  Courts also distinguish "political hyperbole" from true threats given the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."  *Dierks*, 978 F.3d at 589 (quoting *Watts*, 394 U.S. at 708).  However, "political context alone will not excuse a threat."  *Id.*  "Threatening communications that are not conditional, not clearly political in context, and do not 'in any sense contribute to the values of persuasion, dialogue, and the free exchange of ideas,' are true threats and fall outside of the First

Amendment's protection." *Id.* at 590 (quoting *United States v. Bellrichard*, 994 F.2d 1318, 1322 (8th Cir. 1993)).

Lyons relies on *United States v. Kelner*, 534 F.2d 1020 (2d Cir. 1976), for the proposition that "only unequivocal, unconditional and specific expressions of intention immediately to inflict injury may be punished" under the First Amendment as true threats. (Dkt. 30 at 10 (citing *Kelner*, 534 F.2d at 1027).) "Section 875(c) is violated if the government proves the defendant communicated a true threat **and** transmitted that communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat." *Leveke*, 38 F.4th at 668 (citation modified and emphasis added). The existence of a true threat is an objective determination, "depend[ing] not on the mental state of the author, but on what the statement conveys to the person on the other end." *Counterman*, 600 U.S. at 74 (citation modified); *see also Dierks*, 978 F.3d at 589 (addressing § 875(c), and finding that a "'true threat' is a 'statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another'") (quoting *Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (en banc)). A nonexhaustive list of factors relevant to how a reasonable recipient would view the purported threat include:

> 1) the reaction of those who heard the alleged threat; 2) whether the threat was conditional; 3) whether the person who made the alleged threat communicated it directly to the object of the threat; 4) whether the speaker had a history of making threats against the person purportedly threatened; and 5) whether the recipient had a reason to believe that the speaker had a propensity to engage in violence.

*Pulaski Cty. Special Sch. Dist.*, 306 F.3d at 623; *see also United States v. Ivers*, No. 18-CR-00090 (RWP/CFB), 2019 WL 78940, at *3 (D. Minn. Jan. 2, 2019), *aff'd*, 967 F.3d 709 (8th Cir. 2020). The determination of whether a statement is a true threat "must be viewed in textual context and also in the context of **the totality of the circumstances** in which the communication was made." *Dierks*, 978 F.3d at 589 (emphasis added). In other words, the conditional nature of a threat, as set forth in *Kelner*, *supra*, is not the only consideration relevant to how a reasonable recipient would view the purported threat.

Lyons argues that while usually the question of whether a communication constitutes a threat or a true threat is a matter to be decided by the trier of fact, a number of cases outside of the Eighth Circuit have concluded that it is not unprecedented for a court to conclude that a communication does not legally qualify as a threat or a true threat. (Dkt. 30 at 9.) This ignores that the Eighth Circuit has concluded that whether a communication constitutes a true threat is a question for the jury:

> To determine what constitutes a "true threat," "**the fact-finder must** view the relevant facts to determine whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or intent to injure presently or in the future." *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 622 (internal quotation marks omitted); *see also United States v. Mabie*, 663 F.3d 322, 333 (8th Cir. 2011) (noting that the "government need not prove that defendant had a subjective intent to intimidate or threaten," rather, it must show "that a reasonable person would have found that defendant's communications conveyed an intent to cause harm or injury"). **This is for the fact-finder to determine "in the context of the totality of the circumstances in which the communication was made."** *United States v. Bellrichard*, 994 F.2d 1318, 1323 (8th Cir. 1993).

*United States v. Ivers*, 967 F.3d 709, 718 (8th Cir. 2020) (citation modified) (emphases added).

Moreover, the cases cited by Lyons (Dkt. 30 at 9-11) do not persuade the Court that it can find as a matter of law that the communications at issue in this case do not constitute threats or true threats. The Court begins with *United States v. Stock*, 728 F.3d 287 (3d Cir. 2013). In *Stock*, the Third Circuit affirmed the district court's denial of a Rule 12(b)(3)(B) motion to dismiss an indictment alleging a violation of § 875(c). 728 F.3d at 290. The defendant in *Stock* argued "that the issue of whether his statement is a threat is a question of law and that his statement does not express an intent to injure in the present or future," but "disclaim[ed] any First Amendment challenge." *Id.* at 290-91. While the Third Circuit held that a court may find that a communication does not constitute a threat or true threat as a matter of law "in certain cases," that court was clear that this question is usually decided by the trier of fact. *Id.* at 297-98. The Third Circuit also emphasized in *Stock* that it was not deciding whether the communication at issue was a "true threat" for the purposes of the First Amendment, but instead was engaging in a different analysis, limited to a question of statutory interpretation—that is, whether the term "threat" included a temporal element and if so, whether the indictment set forth an actionable "threat." *Id.* at 294, 301.

Lyons also cites *Watts v. United States*, discussed in *Stock*, in which the Supreme Court reversed the trial court's denial of a motion for judgment of acquittal on the grounds that the speech at issue was constitutionally protected. 394 U.S. 705, 705-07 (1969) (per curiam). But in *Watts*, the Supreme Court took the statement "in context,"

11

considered its "expressly conditional nature," as also considered "the reaction of the listeners." *Id.* at 707-08. Given its procedural posture, *Watts* does not persuade the Court that dismissal on First Amendment grounds is appropriate at this stage of this case. In *United States v. Landham*, another case cited by Lyons, the Sixth Circuit reversed a pre-trial denial of a motion to dismiss two counts alleging violations of § 875(c), one allegedly threatening kidnapping because the defendant—a father in the middle of a custody battle whose parental rights had not been terminated—could not be legally charged with kidnapping under Kentucky or federal law, and the second allegedly threatening injury because (among other things), the statement referred to past conduct. 251 F.3d 1072, 1081-83 (6th Cir. 2001). Neither rationale is present as to the communications at issue here.

Lyons also cites to *United States v. Baker*, 890 F. Supp. 1375 (E.D. Mich. 1995) *aff'd sub nom. United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997), *abrogated by Elonis*, 575 U.S. at 739. (Dkt. 30 at 10.) The court in *Baker* granted a pretrial motion to quash an indictment based on the finding that the messages at issue were not "true threats" because they were private messages sent to a co-defendant (Gonda) not intended for further distribution, there was no reason to believe that Gonda would fear violence based on the messages, the messages did "not refer to a sufficiently specific class of targets," and the messages did not contain "any identifiable threatened action." 890 F. Supp. at 1385-90. In doing so, the *Baker* court acknowledged the following:

> Now that the case will be concluded by an order rather than by a jury verdict, it is important to assure the public that such a conclusion is not by fiat. In *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir.), *cert. denied*, 457 U.S.

12

1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982), while the Second Circuit said "that whether words used are a true threat is generally best left to the triers of fact," it went on to say "[o]nly where the factual proof is insufficient as a matter of law should the indictment be dismissed." This is such a case. The communications which form the basis of the superseding indictment, the many preceding and subsequent communications, the names of the witnesses and the general nature of their testimony, and the exhibits are all in the record. All of this evidence, viewed in the light most favorable to the prosecution, leads to one inevitable conclusion: based on the applicable rules of law there is no case for a jury because the factual proof is insufficient as a matter of law.

*Baker*, 890 F. Supp. at 1390.

The facts in *Baker* are distinguishable from the those alleged in the Indictment against Lyons.  The threats in *Baker* involved private emails expressing the defendant's sexual interest in violence against women and girls.  *Id.* at 1379.  The emails were sent by the defendant to an individual (co-defendant Gonda) who was not the target of the alleged threats, but "apparently enjoyed exchanging . . . [messages] concerning violence against women and girls."  *Id.* at 1386.  Here, Lyons sent each alleged specific threat to the targeted individual's cell phone and identified each targeted individual by their name in the message.[2]

*Lyons* also relies on the Sixth Circuit's decision in *Alkhabaz* affirming the district court's decision in *Baker*[3] for the proposition that a court may properly dismiss an indictment as a matter of law if it concludes that no reasonable jury could find that the

---

[2]    This contradicts Lyons' assertion he sent the message to numbers that "he had no way of knowing who they actually belonged to."  (Dkt. 30 at 13.)

[3]    To clarify, defendant Abraham Jacob Alkhabaz was also known as "Jake Baker." *Alkhabaz*, 104 F.3d at 1493.

alleged communication constitutes a true threat.  (Dkt. 30 at 9-10.)  The Sixth Circuit ultimately affirmed the district court's decision in *Baker* on the ground that the communications did not constitute "threats" as a matter of statutory interpretation, and specifically "declin[ed] to address the First Amendment issues raised by the parties."[4] 104 F.3d at 1493, 1496.

Moreover, courts have criticized *Baker* "as a well-recognized outlier in federal case law" noting "the numerous decisions recognizing that in the usual case, whether a communication constitutes a threat or a true threat is a matter to be decided by the trier of fact."  *United States v. Sayward*, No. 3:22-CR-111, 2022 WL 17849053, at *3 (D.N.D. Dec. 22, 2022) (collecting cases).  Indeed, the decision in *Sayward* is consistent with the Eighth Circuit's decision in *Ivers*, where it found whether a communication constitutes a "true threat" is for the fact-finder to determine in the context of the totality of the circumstances in which the communication was made.  967 F.3d at 718 (citation omitted).

Lyons argues that it is important to keep in context that the January 18, 2026 communications at issue in the Indictment occurred during Operation Metro Surge.  (Dkt. 30 at 8.)  Operation Metro Surge, starting in December 2025, led to an unprecedented increase in federal law enforcement presence to enforce immigration laws in Minnesota. *See Hussen v. Noem*, No. 26-CV-324 (ECT/ECW), --- F. Supp. 3d ----, 2026 WL 657936,

---

[4]     The Court also notes that *Alkhabaz*'s definition of threat under § 875(c) has been abrogated by the Supreme Court's decision in *Elonis*, *supra*.  *See United States v. Doggart*, 906 F.3d 506 (6th Cir. 2018).

14

at *2 (D. Minn. Mar. 9, 2026).  Lyons also asserts that in analyzing whether his messages were unequivocal, unconditional, immediate, and specific, the Court should consider the Government's own investigation reports, including his statements to the FBI.  (Dkt. 30 at 11-12.)  Lyons goes so far as to request that the Court schedule an evidentiary hearing for the presentation of evidence and testimony and that the Court thereafter dismiss the Indictment as a matter of law.  (*Id.* at 14.)  He contends that "[e]vidence at an evidentiary hearing will show the Indictment arises out of Mr. Lyons' political speech, directed at federal ICE agents, in response to ICE's presence, tactics, and violence against the Minneapolis community during Operation Metro Surge."  (*Id.* at 6.)  However, all this ignores that "challenges to the evidence's sufficiency are tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29, not by a dismissal of an indictment on the basis of predictions as to what the trial evidence will be."  *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (quoting *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)) (citation modified).  Lyons brought the present Motion to Dismiss under Rule 12, which states that "[a] party may raise by pretrial motion any defense, objection, or request **that the court can determine without a trial on the merits**."  Fed. R. Crim. P. 12(b)(1) (emphasis added).

> Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.  In considering a motion to dismiss, a district court may not make factual findings when an issue is inevitably bound up with evidence about the alleged offense itself.

*United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025) (citation modified).  There is no corollary in the Federal Rules of Criminal Procedure to the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56, and "so long as the indictment contains a facially sufficient allegation of [the elements], federal criminal procedure does not provide for a pre-trial determination of sufficiency of the evidence." *See Ferro*, 252 F.3d at 968 (citation modified).

Moreover, the "context" relied on by Lyons is very different from the circumstances giving rise to dismissal in the cases discussed above.  Given the Eighth Circuit's statement in *Ivers* that whether a communication constitutes a "true threat" is for the fact-finder to determine in the context of the totality of the circumstances in which the communication was made, 967 F.3d at 718, the Court will not recommend dismissal of the Indictment at this stage of the case.  Lyons will have an opportunity to offer evidence to the jury of the historical context in which the communications were made, his subsequent statements to FBI agents, and how he obtained the information regarding the alleged ICE agents he sent text messages to as part of his arguments relating to his intent and whether the communications were true threats.

For all of these reasons, the Court recommends denial of the Motion to Dismiss.

### III.   RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:** Defendant James Patrick Lyons' March 27, 2026 Motion to Dismiss the Indictment (Dkt. 30) be **DENIED**.

Dated: May 27, 2026

s/ *Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).